UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60344-CR-ALTMAN

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

v.

**JOHNNY OLBEL**,

    *Defendant*.

_____/

### ORDER

The Defendant has filed a Motion for Reduction in Sentence and for Compassionate Release (the "Motion") [ECF No. 158]. The Government opposes the Motion (the "Response") [ECF No. 160]. And the Defendant has filed a reply (the "Reply") [ECF No. 161]. While the Defendant's motion was pending, the Bureau of Prisons (the "BOP") asked this Court to clarify whether the Defendant's sentence should run consecutive to, or concurrently with, his state-court sentence.[1] *See* BOP Letter [ECF No. 163]. After carefully considering the Motion, the record, and the governing law, the Court now **DENIES** the Motion and **CLARIFIES** that the Defendant's federal sentence should run consecutive to his state sentence.

### THE FACTS

Johnny Olbel is 37 years old. *See* Response at 12. On May 8, 2007, a federal grand jury charged him with (1) possessing with the intent to distribute five grams (or more) of "crack" cocaine (Count 1), and (2) possessing a firearm as a convicted felon (Count 2). *See* Superseding Indictment [ECF No.

---

[1] The Court ordered the Government to respond to the BOP's Letter. *See* Order Requesting Memorandum [ECF No. 164]. Both the Government and the Defendant have now responded. *See* Government's Response to BOP Request for Clarification [ECF No. 167]; Defendant's Reply to BOP Letter [ECF No. 168].

31] at 1–2. Before trial, the Government filed a notice of intent to seek enhanced penalties under 21 U.S.C. § 851. *See* Response at 1. This notice increased Olbel's mandatory minimum on Count 1 from five years to ten and enhanced his maximum from 40 years to life. *See* Information and Notice of Government's Intent to Rely Upon Narcotics Convictions as Grounds for Increased Punishment ("851 Notice") [ECF No. 48] at ¶¶ 1–2. Olbel elected to proceed to trial, where a jury found him guilty of both counts. *See* Response at 1.

Next came the sentencing. The Presentence Investigation Report ("PSI") determined that Olbel was a career offender.[2] *See* PSI ¶ 19. As such, Olbel's advisory guidelines range was 360 months to life. *See id.* ¶ 81. And, as we've said, Olbel faced statutory terms of imprisonment of 10 years to life on Count 1 and zero to ten years on Count 2. *Id.* On August 28, 2007, the Honorable William J. Zloch sentenced Olbel to 360 months on Count 1 and 120 months as to Count 2—to be served concurrently. *See* Sentencing Transcript [ECF No. 103-1] at 25:6–17. Judge Zloch also ordered Olbel to serve eight years of supervised release. *See id.* Olbel timely appealed, but the Eleventh Circuit affirmed his conviction and sentence. *See United States v. Olbel*, 275 F. App'x 910 (11th Cir. 2008).

In 2019, Olbel asked the Court to reduce his sentence under the First Step Act, which (in cases like Olbel's) made the Fair Sentencing Act of 2010 retroactive. *See* Defendant's 2019 Motion to Reduce Sentence (the "2019 Motion") [ECF No. 145]. The Court held a hearing on this 2019 Motion, during which several witnesses outlined Olbel's efforts at rehabilitation and his impressive plans for reentry. Having heard from both sides, the Court granted Olbel's motion and reduced his term of imprisonment to 188 months and his term of supervised release to six years. *See* 2019 Order Granting Defendant's Motion to Reduce Sentence (the "2019 Order") [ECF No. 156] at 1.

---

[2] The PSI listed Olbel's criminal history as including convictions for, among other things, (1) battery on a law enforcement officer and (2) possession of a controlled substance with the intent to sell or deliver within 200 feet of a park. *See* PSI ¶ 19.

2

Not content to let things lie, on May 8, 2020, Olbel asked the Warden of FCI Coleman for early release—a request the Warden denied on June 1, 2020. *See* Motion at 2, 5. Two weeks later, on June 15, 2020—less than one year after this Court reduced his sentence—Olbel filed this Motion, in which he advances two arguments. *Id.* at 3. *First*, he says that the ongoing pandemic justifies his early release. *See id.* at 3–4. *Second*, he claims that he's been "unable to shake the stigma of being label[ed] a career offender and that if he was sentence[d] today he would not be subject to the title and label [of career offender] which hinder him from receiving the full benefit effect of the First Step Act Section 404." *Id.* As redress, he asks the Court to reduce his sentence to time served and to further cut his supervised release term from six years to three. *See id.* at 4. As we've said, while Olbel's Motion was pending, the Federal Bureau of Prisons ("BOP") asked the Court to clarify whether Olbel's federal sentence should run concurrently with, or consecutive to, his state sentence. *See* BOP Letter [ECF No. 163].

For the reasons set out below, we deny Olbel's Motion. We also conclude that Olbel's federal sentence should run consecutive to his separate state sentence.

## The Law

A district court has "no inherent authority" to modify an already-imposed term of imprisonment. *See United States v. Diaz-Clark*, 292 F.3d 1310, 1319 (11th Cir. 2002) (cleaned up). Instead, "[t]he authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). As relevant here, a district court may modify an imprisonment sentence "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B).

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the

3

Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. *See* § 3582(c)(1)(A)(i). And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* § 3582(c)(1)(A)(ii).

### ANALYSIS

This Order answers two distinct (but related) questions. *First*, is Olbel entitled to a sentence reduction under § 3582(c)(1)? And *second*, does Olbel's federal sentence run consecutive to or concurrently with his state sentence?

**I.  Exhaustion of Administrative Rights to Appeal**

Under § 3582(c)(1)(A), this Court may consider Olbel's Motion only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after* the defendant has *fully exhausted* all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" (emphases added). The statute is therefore clear that, before he may seek redress in federal court, Olbel must *fully* exhaust his administrative remedies.

While Olbel does not directly allege that he's exhausted his administrative remedies, the record makes plain that he has. Olbel submitted his request for compassionate release to the Warden on May 8, 2020, *see* Motion at 2, 5, and the Warden denied that request on June 1, 2020, *id*. at 2, 6. Olbel has thus exhausted his administrative remedies—and the Government (notably) doesn't suggest otherwise. *See* Response at 5.

### II.    18 U.S.C. § 3553

The relevant § 3553 factors weigh against a further reduction here. Olbel doesn't squarely challenge this Court's analysis of the § 3553(a) factors, *see generally* Motion—an analysis that (again) this Court undertook just 23 months ago. Instead, he says that his "career offender" label has continued to stigmatize him—his First Step Act reduction notwithstanding—and that the only remedy for that prejudice is a further reduction to time served. *Id.* at 3.

We aren't persuaded. To understand why, we'll look at each of the § 3553(a) factors in turn. *First* up is the "nature and circumstances of the offense." § 3553(a)(1). Congress has determined that convicted felons should not be running around town with guns. *See* 18 U.S.C. § 922(g). In saying so, Congress expressed the commonsense view that convicted felons are particularly dangerous when they are armed. *See Lewis v. United States*, 445 U.S. 55, 67 (1980) ("The federal guns laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational."). Despite a serious criminal history (more on this below), Olbel was found in possession of a firearm—a factor that weighs against his request for a reduction.

The gun was bad enough. But Olbel was also poisoning his community with a dangerous, adulterated narcotic that's both harmful and addictive. *See* Drug-Free Communities Support Program Reauthorization, Pub. L. No. 107-82, § 1(a)(6)(A), 115 Stat. 814, 816 (2001) ("[D]rug use continues to be a serious problem facing communities across the United States . . . [and] crack and powder cocaine remain[] the most serious drug problem[.]"); *see also* U.S. Sentencing Comm'n, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 3–4 ("Regardless of the quantity of drug involved, distributing [cocaine (powder or crack)] . . . is a serious crime. [Cocaine] cause[s] great harms to

5

individuals and to society at large, and the stern punishment meted out under federal law for drug distribution reflect congressional, executive, and Sentencing Commission judgement about the gravity of these offenses and the menace caused by these drugs."). Olbel's crimes, in short, were serious and justify a significant term of incarceration.

*Second*, Olbel has an extensive criminal history. In fact, by the time he was convicted of these crimes in 2007, he had already been arrested a staggering 24 times—with six of these resulting in felony convictions. *See* PSI ¶¶ 22–50. This out-of-prison misconduct aside, Olbel's conduct *during* his incarceration also presents something of a mixed bag. As the Government has pointed out, the BOP has had to sanction Olbel *seven different times* for a wide variety of disciplinary infractions—including the illegal possession of intoxicants and the possession (in 2009) of a dangerous weapon. *See* Inmate Chronological Disciplinary Record ("Disciplinary Record") [ECF. No 160-2] at 2. His "history and characteristics,"[3] in other words, weigh strongly against the relief he's seeking.[4]

*Third* and *fourth* are "adequate deterrence" and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A), (B). Olbel wants us to ignore his propensity for recidivism and cut out the remainder of his sentence. *See generally* Motion. This we will not do. To release Olbel now—less than halfway through his sentence—would be to send precisely the *wrong* message: that gun and drug crimes aren't serious, that the dangers of arming felons are overblown, and that the penalties set out in our

---

[3] § 3553(a)(1).
[4] And, while Olbel appears to have cleaned up his act over the last four years, *see generally* Disciplinary Record, this Court already considered his efforts at rehabilitation in granting his 2019 Motion, *see* 2019 Order. We won't double dip by reducing Olbel's sentence again based on the very same conduct that led to his reduction the first time around.

gun and drug laws needn't be strictly followed. Releasing Olbel, in other words, would *decrease*, rather than increase, the citizenry's respect for the law.[5]

The § 3553(a) factors, in sum, do not support Olbel's request for relief.

### III.     18 U.S.C. § 3582

The statute that governs sentencing reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)   extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

---

[5] Olbel never suggests that a further reduction is necessary to avoid "unwarranted sentencing disparities"—another factor under § 3553(a). Nor could he. Given the substantial reduction he received, Olbel's already serving a much lower sentence than the vast majority of similarly situated defendants.

18 U.S.C. § 3582.

Because Olbel is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But § 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   **(A) Medical Condition of the Defendant.**

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is

      (I) suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

      (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   **(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   **(C) Family Circumstances** [purposefully omitted]

> **(D) Other Reasons.** – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.—** The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

§ 3142(g).

Olbel bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer presents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Olbel cannot satisfy the "Age of the Defendant" test. While he has served more than 10 years (and 75%) of his sentence, he is neither 65 years old nor experiencing serious physical or mental deterioration because of the aging process. *See generally* Motion. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Olbel admits that he "is not suffering from any medical or age-related physical limitations." Motion at 3. And his medical records confirm that he's strong and healthy. *See* BOP Health Services Health Screen [ECF No. 160-1]. He thus cannot satisfy any of the "extraordinary and compelling circumstances" outlined in sections (A), (B), or (C) of the Sentencing Guidelines. And, to his credit, Olbel doesn't try to meet these requirements. *See generally* Motion. Instead, he argues that the First Step Act authorizes us to modify his sentence under section (D), which allows courts to reduce a sentence when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt n.1(D).

Recognizing—as he must—that, by its own terms, this catch-all provision only applies when the "Director of the Bureau of Prisons" determines that "extraordinary and compelling" reasons "exist," Olbel asks us to grant *ourselves* that same authority. From Olbel's perspective, this reading of section (D) is perfectly consistent with the intentions of the First Step Act's drafters. Here, he reminds us that, before the First Step Act, only the BOP Director could bring a motion to reduce an inmate's sentence under § 3582(c)(1)(A). *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (Sutton, J.) ("Prior to 2018, it is true, only the Director of the Bureau of Prisons could move for compassionate release."). But, he notes, "[t]he First Step Act changed that." *Id.* Now, *either* the BOP Director *or* the prisoner can file such a motion. *See* § 3582(c)(1)(A). And this alteration of the statute, Olbel says, should apply with equal force to the catch-all provision in section (D) of the Sentencing Guidelines, which likewise is contingent on a determination by the BOP Director. *See* Motion at 3 ("[I]t is for the Court, not the Director of the Bureau of Prisons, to determine whether there is an extraordinary and compelling reasons [sic] to reduce a sentence." (cleaned up)). Olbel even cites a few district court decisions—all from outside our Circuit—that seem to support his view.[6] *See id.* at 3–4.

Unfortunately for Olbel, the Eleventh Circuit recently rejected his position, explaining that "the [First Step Act] did not give courts the freedom to define 'extraordinary and compelling reasons.'" *United States v. Bryant*, 996 F. 3d 1243, 1264 (11th Cir. 2021). "The [First Step Act's] *only* change was to allow for defendant-filed reduction motions." *Id.* at 1263 (emphasis added). In other words, "Section

---

[6] *See, e.g.*, *United States v. Redd*, 443 F. Supp. 3d 717, 726 (E.D. Va. 2020) ("[R]estricting the Court to those reasons set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C), as the Government proposes, would effectively preserve to a large extent the BOP's role as the exclusive gatekeeper, which the First Step Act substantially eliminated . . . ."); *United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (holding that, "[u]nder the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an 'extraordinary and compelling reason' to reduce a sentence," and adding that the court may do so "even if [the defendant's] situation does not directly fall within the Sentencing Commission's current policy statement"); *United States v. Beck*, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019) ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act.").

1B1.13 lists four extraordinary and compelling reasons: the medical condition of the defendant, the age of the defendant, family circumstances, and other reasons as determined by the Bureau of Prisons." *United States v. Griffin*, ___ Fed. Appx. ___, 2021 WL 2179331, at *2 (11th Cir. 2021) (citing U.S.S.G. § 1B1.13 cmt. n.1). And "[t]he *Bryant* panel also held that 'other reasons' are limited to those determined by the Bureau of Prisons, not by courts." *Id.* (quoting *Bryant*, 996 F. 3d at 1263).

*Bryant* and *Griffin* likewise foreclose Olbel's career-offender argument. Olbel (recall) says that, if he were sentenced today, he wouldn't qualify as a career offender. *See* Motion at 2–3. And it's this discrepancy between how he would be sentenced today and how he was sentenced in 2007 that (Olbel maintains) qualifies as an "extraordinary and compelling reason" under § 3582(c)(1)(A). *See id.* Here, Olbel is partly right. In *Johnson v. United States*, 599 U.S. 133, 145 (2010), the Supreme Court held that Florida felony battery does not constitute a "violent felony" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). And, in *United States v. Williams*, 609 F.3d 1168, 1169–70 (11th Cir. 2010), the Eleventh Circuit concluded that "a conviction for felony battery on a law enforcement officer in Florida, standing alone, no longer satisfies the 'crime of violence' enhancement criteria as defined under the 'physical force' subdivision of section 4B1.2(a)(1) of the sentencing guidelines."

So far, so good. Olbel runs into problems, however, when he tries to parlay these intervening judicial decisions into the kinds of "extraordinary and compelling reasons" contemplated by § 1 B1.13. And that's (again) because *Griffin* held that § 1B1.13 lists *only* "four extraordinary and compelling reasons: the medical condition of the defendant, the age of the defendant, family circumstances, and other reasons as determined by the Bureau of Prisons." *Griffin*, 2021 WL 2179331, at *2 (citing U.S.S.G. § 1B1.13 cmt. n.1). And, it added, "'other reasons' are limited to those determined by the Bureau of Prisons, not by courts." *Id.* (quoting *Bryant*, 996 F. 3d at 1263). *Griffin* thus held that the First Step Act's amendment to the stacking provisions of 18 U.S.C. § 924(c) did *not* constitute the

kinds of "extraordinary and compelling reasons" that would justify compassionate release under § 3582. *See id.* That's really the end of the matter.[7]

But here's the point: even if the holdings in *Johnson* and *Williams* did justify a reduction in Olbel's sentence, this Court *already gave* him precisely that reduction when it granted his 2019 Motion and cut his sentence from 360 months to 188. *See* 2019 Order. Again, we won't double dip by giving Olbel two significant reductions for the price of one.

Which brings us to Olbel's final argument—that the ongoing Covid-19 pandemic justifies his early release. *See* Motion at 3. In support of this argument, he says that "[i]nmates are constantly getting sick . . . [s]taffs [sic] have been infected by COVID-19 as well as inmates." *Id.* But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Castillo-Romero*, 2020 WL 6203531 (M.D. Fla. Oct. 22, 2020) (denying request for compassionate release premised on Covid-19 pandemic by 47-year-old with no other health conditions); *United States v. Sylvin*, 2020 WL 6135145 (S.D. Fla. Oct. 19, 2020) (denying compassionate release premised on pandemic for 37-year-old without underlying health conditions); *United States v. Israel*, 2020 WL 3893987 (S.D. Fla. Jul. 10, 2020) (denying compassionate release premised on pandemic for 76-year-old with history of heart attack); *United States v. Harris*, 2020 WL 1969951, at *2 (M.D Fla. Apr. 24, 2020) (observing that "the BOP Director has not found COVID-19 alone to be a basis for compassionate release").

---

[7] *See also United States v. Lewis*, 2020 WL 4583525, at *3 (M.D. Fla. Aug. 10, 2020) (quoting *United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020) ("[N]either the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." (cleaned up))); *United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. March 17, 2020) ("[T]he disparity between [the defendant's] actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.'"); *United States v. Scott*, 508 F. Supp. 3d 314 (N.D. Ind. 2020) (same).

Indeed, whatever the merits of Olbel's Covid-19 arguments 13 months ago—when he filed his Motion—there's little to recommend them today. For one thing, the BOP has offered a safe and effective vaccine to all of its inmates and staff. *See* Bureau of Prisons Covid-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed July 15, 2021) (noting that the BOP has administered over 201,800 doses of Covid-19 vaccines to its 130,000 inmates and 36,000 staff members). Since Olbel should have gotten his vaccine already, he has little to fear from Covid-19. *See United States v. Broadfield*, --- F. 4th ---, 2021 WL 3076863, at *2 (7th Cir. July 21, 2021) (holding, in a case involving a defendant with chronic breathing problems, that Covid-19 was not an extraordinary and compelling reason justifying the defendant's compassionate release because the BOP had made an effective vaccine available to him).[8]

### IV.    18 U.S.C. § 3142

Even if Olbel *had* satisfied the "extraordinary and compelling" reasons test, his Motion would still fail because he cannot show that he poses no danger to his community. As the relevant Guidelines provision makes plain, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if Olbel "demonstrates he no longer poses a threat to society, as defined by 18 U.S.C. § 3142(g)." *United States v. Stuyvesant*, 2020 WL 1865771, at *6 (S.D. Fla. Apr. 14, 2020).

Olbel hasn't even attempted to show that he presents no such danger. *See generally* Motion (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon*, 2019 WL 5580233, at *2; *Heromin*, 2019 WL 2411311, at *2; *cf. Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support

---

[8] Of course, if Olbel has chosen *not* to receive a Covid-19 vaccine, then the dangers he faces from Covid-19 are entirely of his own creation and, in that way, cannot constitute extraordinary or compelling circumstances.

of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). This omission is thus fatal to his claim.

### V. Olbel's Federal Sentence Should Run Consecutive to his State Sentence

The BOP has asked this Court to clarify whether Olbel's federal sentence should run concurrently with, or consecutive to, his state sentence. *See* BOP Letter at 2. This question isn't merely academic. A finding that the sentences should run concurrently would result in Olbel's immediate release, whereas the opposite conclusion would push his release date back to November 4, 2021. *Id.* And we can glean little that's helpful from the two judgments because both are (unfortunately) silent on this question. *See id.* at 1–2; *see also* Federal Judgment [ECF No. 91].

A "federal court is authorized to impose a federal sentence consecutive to a state sentence." *United States v. Ballard*, 6 F.3d 1502, 1506 (11th Cir. 1993) (citing *United States v. Adair*, 826 F.2d 1040, 1041 (11th Cir. 1987)); *see also United States v. Lavariega-Juarez*, 768 F. App'x 978, 980 (11th Cir. 2019) (quoting *Setser v. United States*, 566 U.S. 231, 236 (2012) ("[C]ourts have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that . . . have been imposed in other proceedings, including state proceedings." (cleaned up))). This is true even when a district court "impose[s] a federal sentence consecutive to an unimposed state sentence on pending charges." *Ballard*, 6 F.3d at 1510.

That said, unless the judgment says otherwise, we presume that two separate terms of imprisonment run consecutively to each other. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."). Indeed, the Sentencing Guidelines express a "general preference for consecutive sentences when imprisonment terms are imposed at different times." *Lavariega-Juarez*, 768 F. App'x at 981 (cleaned up) (quoting *Ballard*, 6 F.3d at 1506).

15

There is, of course, one principal exception to this general rule: when the "anticipated, but not yet imposed, state sentence result[s] from an offense that is relevant conduct to the instant federal offense," the Guidelines "advise[] courts that a federal sentence shall be imposed to run concurrently." *United States v. Ward*, 796 F. App'x 591, 597–98 (11th Cir. 2019) (cleaned up) (quoting U.S.S.G. § 5G1.3(c)); *see also United States v. Olmeda*, 894 F.3d 89, 92–93 (2d Cir. 2018) ("In the wake of *Setser*, the United States Sentencing Commission amended U.S.S.G. § 5G1.3 by adding subsection (c)[.]"); *United States v. Bidwell*, 393 F.3d 1206, 1210 (11th Cir. 2004) ("Sections 5G1.3 and 1B1.3 interact to protect a criminal defendant from duplicative prosecutions.").

But this exception doesn't apply here because Olbel's state and federal sentences stemmed from *unrelated* crimes he committed on *different* days. *See* Superseding Indictment at 1; *see also* Response to BOP's Letter at 2. In the state case, which arose from Olbel's September 22, 2006 arrest, Olbel was charged with three crimes: (1) Felony Driving While License Revoked; (2) Fleeing or Attempting to Elude a Law Enforcement Officer; and (3) Possession of Cocaine with Intent to Deliver/Sell. *See* Response to BOP's Letter at 2. Olbel eventually pled guilty to these charges, and a state judge sentenced him to 15 months in prison. *See id.* at 3. Olbel's federal case, of course, resulted from his being found with crack cocaine and a loaded gun on November 8, 2006. *See* Superseding Indictment at 2. Notably, Olbel's federal PSI didn't recommend that Judge Zloch treat the state case as "relevant conduct" for purposes of the federal sentence, *see generally* PSI, and there's no evidence that Judge Zloch did, *see generally* Judgment [ECF No. 91]; *see also* Sentencing Transcript [ECF No. 130-1]. Olbel (to his credit) never even argues that his state sentence was "relevant conduct." *See* Defendant's Reply to BOP Letter. He's thus waived any such argument. *See Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived."). In any event, given the presumption

that separate sentences run consecutively, we see no reason to conclude that Olbel's state and federal sentences were ordered to run concurrently.[9]

\*\*\*

Having carefully considered the Motion, the record, and the governing law, the Court hereby **ORDERS** and **ADJUDGES** as follows:

1. Olbel's Motion for Reduction in Sentence and for Compassionate Release [ECF No. 158] is **DENIED**.

2. Regarding the BOP's Request for Clarification [ECF No. 163], the Court finds that Olbel's federal sentence should run **CONSECUTIVELY** to his state sentence.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 4th day of August 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record
     Bureau of Prisons

---

[9] One last thing. Olbel asks the Court to give him a jail-time credit that (he says) the Designation and Sentence Computation Center ("DSCC") failed to take into account after this Court resentenced him. *See* Defendant's Reply to BOP Letter at 1, 4. But, as the Government points out, "the Attorney General through BOP, and not district courts, is authorized to compute sentence credits *after sentencing.*" *Dawson v. Scott*, 50 F.3d 884, 889 (11th Cir. 1995) (citing *United States v. Wilson*, 503 U.S. 329, 333–35 (1992)). We thus have no authority to consider Olbel's request.